UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| DARA M. GRIMES | ) | |
|       Plaintiff, | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 2:13-cv-36-PPS-APR |
| | ) | |
| GARY COMMUNITY SCHOOL | ) | |
| CORPORATION, CITY OF GARY | ) | |
| D. GOSHAY, AND A. BRADSHAW, | ) | |
| | ) | |
|       Defendants. | ) | |

## OPINION AND ORDER

This action stems from an incident that occurred at Lew Wallace High School in Gary, Indiana. Dara Grimes was at Lew Wallace l in her role as a family support specialist in support of her client MM, a special education student at the high school, who was participating in a meeting to decide if Lew Wallace was the appropriate place to continue his education. After the meeting, two Lew Wallace High School security guards, one of whom also was a police officer for the City of Gary, Indiana and the other of whom also was a volunteer reserve police officer for the City of Gary, attempted to arrest MM with the understanding that there was an outstanding warrant for his arrest. Grimes attempted to intervene on MM's behalf, and in the process, she ended up being arrested herself. Grimes brought this action against the Gary Community School Corporation, the City of Gary, and the two police officers involved in the incident. All four defendants have moved for summary judgment.

## Factual Background

In January 2011, Dara Grimes was employed with the Indiana Juvenile Justice Task Force as a family support specialist. [DE 92-5 at 4.] Her job was to be an advocate for juveniles who were involved in the juvenile probation system. [*Id.*] She also provided counseling, case management services, and drug screening and counseling. [*Id.*]

On January 21, 2011, Grimes visited Lew Wallace High School to provide support for her client at a change of placement conference. [DE 92-5 at 6.] The purpose of this conference was to determine whether Lew Wallace High School was an appropriate place for Grimes' client, MM, a special education student with a disability. [*Id.*; DE 7 at 4.] MM was eighteen at the time. [DE 97-2 at 32.] The individuals in the change of placement conference included Grimes, MM, Regina Hunter (MM's guardian/grandmother), and MM's Probation Officer Alfonso Royal. [DE 92-5 at 7.]

Officers Goshay and Bradshaw also were at Lew Wallace High School on January 21, 2011. At that time, Officer Goshay was employed by the City of Gary, Indiana as a police officer and Officer Bradshaw was an unpaid volunteer Gary police reserve officer. [DE 97-28 at 1-2; DE 97-29 at 1-2.] Both of the Officers also were employed by the Gary Community School Corporation and were working at Lew Wallace High School as security guards. [*Id.*] Officers Goshay and Bradshaw were not present in the change of placement conference.

Officer Bradshaw knew MM due to an experience with him a couple of months earlier; in October 2010 Officer Bradshaw had an encounter with MM where he asked MM to remove his hooded sweatshirt, which allegedly causing MM to become belligerent. [DE 96-2 at 1.] Officer Bradshaw handcuffed MM, who then ran away. [*Id.*] Officer Bradshaw says that when he saw MM the day of his change of placement conference, he recognized him and asked Officer Goshay to call the Gary Police Department to see if there was an active warrant out for MM stemming from the October 2010 incident. [*Id.* at 2.] Officer Bradshaw claims that the Gary Police Department confirmed that there was an active warrant for MM which the police headquarters faxed to him. [*Id.*] Officer Bradshaw decided to arrest MM at the conclusion of the change of placement conference. [*Id.*]

What happened after the change of placement conference is disputed. Grimes testified that after the meeting, she was summoned by Ms. Hunter and Probation Officer Royal, who she followed to the high school's small security office. [DE 97-2 at 5, 13.] When Grimes arrived into the security office, the people present were Officer Goshay, Officer Bradshaw, Probation Officer Royal, Ms. Hunter, and MM. [*Id.* at 7.] Officer Bradshaw was at the computer terminal and MM was handcuffed and seated. [*Id.*; 92-5 at 13.] Officer Goshay was already engaged in a conversation with Probation Officer Royal and Ms. Hunter explaining why MM had been arrested. [DE 97-2 at 8.] Grimes claims that the Officers said that she could enter the security office. [DE 97-2 at 4.] The Officers disagree and say that Grimes entered the room without any authority

3

from School Corporation personnel and injected herself into the room and conversation. [DE 92 at 3.] Grimes admits that prior to entering the security office, she had no interaction with Officer Goshay or Officer Bradshaw [DE 92-5 at 18], but claims that Probation Officer Royal asked Officer Goshay if Ms. Hunter and Grimes could enter the security office, and Officer Goshay said "yes" [DE 97-2 at 4].

Once inside the security office, Grimes asked why MM had been arrested and Officer Goshay explained that there was an outstanding warrant for an incident that occurred in 2010. [DE 97-2 at 9.] Grimes responded that she, Probation Officer Royal, and Ms. Hunter had been told by the school administration and the special education director at a manifestation hearing for MM on November 30, 2010 that the charges had been dropped because it was found that the conduct of MM was a manifestation of his disability and that there were no grounds to arrest MM. [*Id.* at 9-10.]

While many of the details of what happened next are disputed, the parties agree that everyone was upset. [DE 97-2 at 11.] Grimes says that she was confused and upset because she did not understand how MM could be rearrested when the charges against him had been dropped. [*Id.* at 11-12.] She says that Ms. Hunter and Probation Officer Royal confirmed that they also believed the charges had been dropped and tried to explain to the Officers that Ms. Hunter had called the main police department after the initial arrest and was told multiple times that there were no warrants in the system for MM. [*Id.*] MM was crying out to Ms. Hunter that there was no warrant. [DE 92-5 at 14.] Grimes says she was annoyed and felt blindsided because, in her mind, MM's

4

rights were being violated. [*Id.* at 15.] Officer Bradshaw says that Grimes raised her voice, becoming loud and boisterous, and was asked to leave the office multiple times because she was interfering with the arrest of MM. [DE 96-2 at 3.] Officer Bradshaw says that Grimes continued to refuse to leave the office and also refused to identify herself. [*Id.*] He describes Grimes as loud and aggressive. [DE 97-9 at 70.]

Grimes describes Officer Bradshaw as the agitated one, describing him as combative and disrespectful and says that he raised his voice. [DE 97-2 at 14.] Grimes says that Officer Goshay kept trying to redirect Officer Bradshaw to calm him down because he got very upset and agitated and even said he was overwhelmed and was abruptly turning around from the computer station to speak to Grimes. [DE 92-5 at 15.] According to Grimes, at some point, Officer Bradshaw told her that if she didn't leave the security office, he was going to charge her with trespassing, at which point she responded that she would need to speak to an attorney because she knew what her rights were and asserted that she was invited into the room by the Officers. [*Id.* at 16] Grimes says that Officers Bradshaw and Goshay then continued to threaten her with arrest. [*Id.*]

Grimes claims that Officer Goshay then said that she needed to leave and as Grimes was leaving, she said again that she will have to check with her attorney about that. [*Id.*] Grimes says that she walked into the hallway and, after Grimes made that statement, Officer Goshay ran into the hallway, pushed Grimes' face against the concrete wall, forcibly pushed her harm behind her back, handcuffed her so tightly that

5

it caused bruising, and told her that she was under arrest. [*Id.*; 97-2 at 18, 31-32.] Ms. Hunter says that both of the Officers participated in the arrest – that Officer Bradshaw grabbed Grimes first but Officer Goshay "manhandled her."[1] [DE 97-27 at 3.] Confusingly, Officer Bradshaw swore in his affidavit that he was the one who arrested and handcuffed Grimes [DE 96-2 at 3], but testified at his deposition that Officer Goshay was the one who arrested Grimes [DE 97-9 at 71-72.] Grimes eventually was transported to the police station in Downtown Gary and was charged with Resisting Law Enforcement and Disorderly Conduct. [DE 97-2 at 16, 21; DE 92-2; DE 92-3.]

Grimes filed this lawsuit against Gary Community School Corporation, the City of Gary, Officer Goshay, and Officer Bradshaw alleging that the School Corporation and the City of Gary failed to train the officers with regards to an officer's warrantless arrest of a citizen as well as with regards to interaction with young students in the public school environment. Grimes also claims and that Officers Goshay and Bradshaw's conduct toward her deprived her of her Fourth Amendment right to be secure from unreasonable seizures by law enforcement officials, and to be free from the use of excessive and unreasonable force by law enforcement officers acting under the color of

---

[1]The School Corporation and the Officers have moved to strike, among other exhibits to Grimes' Statement of Genuine Issues [DE 97], Regina Hunter's affidavit because it did not contain an original signature, date, or any contact information for Ms. Hunter [DE 100 at 2]. Subsequent to the motion, Grimes supplemented the affidavit by filing a corrected signature page with an original signature, date, and contact information for Ms. Hunter. [DE 105.] For this reason, the motion to strike is denied as to the Hunter affidavit and denied as moot as to the other exhibits because I did not rely upon them for purposes of this Opinion and Order.

state law.  Finally, Grimes claims that Officers Goshay and Bradshaw's conduct was a violation of her First Amendment free speech rights.  [DE 7.]

## Discussion

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute about a material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A nonmoving party like Grimes is not entitled to the benefit of "inferences that are supported by only speculation or conjecture."  *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008) (citations and quotations omitted).

Summary judgment will granted in favor of the City of Gary on all claims for several reasons.  First, the City of Gary is a separate and distinct entity from the Gary Community School Corporation and has no control over the affairs of the school corporation.  Ind. Code 20-23-4-3 (defining a community school corporation); 20-26-3-1 (establishing the policy of the state "to grant each school corporation all the powers needed for the effective operation of the school corporation"); 20-26-2-2 (defining the "governing body" of a school corporation, which does not include the City). Furthermore, there is no evidence of any contractual relationship, written or implied, between the City of Gary, the Gary Police Department, and the School Corporation regarding school security operations.

Second, Officers Goshay and Bradshaw were acting as employees of the School Corporation and not the Gary Police Department at the time of Grimes' arrest. In Indiana, "an employee's wrongful act may still fall within the scope of his employment if his purpose was, to an appreciable extent, to further his employer's business." *Stropes v. Heritage House Childrens Ctr. of Shelbyville*, Inc., 547 N.E.2d 244, 247 (Ind. 1989). It is common for local police officers to be hired to work as school security officers and, in these circumstances, there is a distinction to be drawn between their roles as police officers and school security officers. *K.W. v. State*, 984 N.E.2d 610, 613 (Ind. 2013). On the day of January 21, 2011, Officers Goshay and Bradshaw were working at Lew Wallace High School in their roles as school security officers and were employees of the School Corporation.

Third, there is no evidence that the City's police officer training was inadequate in any way. Grimes has simply offered no evidence to support her claim that the City (and the School Corporation) failed to provide necessary training to prevent the Constitutional violations alleged in this case – false arrest and the use of excessive force in making arrests. Indeed, the only evidence is to the contrary. Officer Bradshaw testified regarding the types of training he received as a police officer in things such as crowd control and crisis intervention during which the police officers were "trained to talk certain ways to handle the situation non-aggressively" when encountering an individual with a mental disability. [DE 97-9 at 34-36.]

Finally, Grimes believes that the City (and the School Corporation) failed to train the officers to operate in the unique environment of a public school and that this failure is a proximate cause of her alleged injuries. This argument is beside the point under the facts of this case. Grimes is an adult, not a juvenile. The incident in this case would have unfolded exactly the same way had the individuals in the school security office been, for example, in a mall security office, a corporate office building, or a police station. The fact that it occurred in a school is incidental to the analysis. If this case was brought by a *student* who was allegedly wrongfully arrested, then perhaps police training specific to the school environment would be germane. But this isn't that case. Furthermore, there is no evidence that additional training was even needed, especially in light of the fact that Gary police officers receive crisis intervention training. For these reasons, the City cannot be held liable for any of Grimes' alleged injuries.

Summary judgment is also granted in favor of the School Corporation on all claims for several of the same reasons. As I just discussed, Grimes has offered no evidence that police officer training was inadequate in any way and the lack of training regarding working in the public school environment is irrelevant to the facts of this case. Furthermore, in order for the School Corporation to be on the hook for the Officers' alleged behavior, essentially for Officers Bradshaw and Goshay to be found liable in their official capacity, Grimes must provide evidence that there was a custom or practice of this type of behavior within the School Corporation. "[A] governmental entity is liable under § 1983 only when the entity itself is a moving force behind the

deprivation; thus, in an official-capacity suit the entity's policy or custom must have played a part in the violation of federal law." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (internal citations and quotations omitted); *see also Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.") Grimes has provided no evidence that there was a policy or custom within the School Corporation to arrest individuals without probable cause or to use excessive force when effecting arrests. For these reasons, the School Corporation cannot be held liable for any of Grimes' alleged injuries.

Summary judgment on Grimes' First Amendment claim is also granted in favor of all Defendants. "The law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). To survive summary judgment on her First Amendment claim Grimes must show that (1) she engaged in activity protected by the First Amendment; (2) she suffered a deprivation that would likely deter First Amendment activity; and (3) the First Amendment activity was at least a motivating factor in the officers' decision. *Thayer v. Chiczewski*, 705 F.3d 237, 251 (7th Cir. 2012).

Grimes' First Amendment claim fails under the last prong of this analysis. Regardless of the nature of the speech, there is no evidence that Grimes' speech was a

motivating factor for her arrest or that the Officers were reacting with a retaliatory animus. *Thayer v. Chiczewski*, 705 F.3d 237, 253 (7th Cir. 2012) (affirming grant of summary judgment in favor of police officer defendants because the record was "void of evidence showing that the officers acted with retaliatory animus"). The Officers contend that it was Grimes' unruly behavior that led to her arrest and she has neither contested this nor presented evidence to the contrary. It therefore was not the *content* of her speech that led to her arrest. Rather, it was the fact that she was causing a disruption, generally, and interfering with the Officers' ability to do their job. Whether or not the disruption was sufficient to generate probable cause for purposes of arresting Grimes is an issue I will address in a moment, but what is clear from the evidence is that everyone in the security office was upset, and it was the *manner* of how Grimes was speaking, not what she was saying, that resulted in her arrest. For these reasons, Grimes' First Amendment claim cannot survive summary judgment.

Genuine issues of material fact exist as to Grimes' remaining claims for false arrest and excessive force. Turning first to the false arrest claim, the existence of probable cause is an absolute bar to a § 1983 claim for false arrest. *Potts v. City of Lafayette, Ind.*, 121 F.3d 1106, 1113 (7th Cir. 1997). To determine whether probable cause existed at the moment of arrest, the trier of fact must decide "whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the

[person being arrested] had committed or was committing an offense." *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964).

Grimes was arrested and charged for resisting law enforcement and disorderly conduct. The relevant portions of the Indiana Code provide as follows:

Indiana Code 35-44.1-3-1(a)(1) (Resisting Law Enforcement):

A person who knowingly or intentionally forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of the officer's duties . . . commits resisting law enforcement, a Class A misdemeanor.

Indiana Code 35-45-1-3(a)(2) (Disorderly Conduct):

A person who recklessly, knowingly, or intentionally . . . makes unreasonable noise and continues to do so after being asked to stop . . . commits disorderly conduct, a Class B misdemeanor.

As discussed above, the facts are anything but clear in terms of what happened in the security office that day. Many facts are disputed as to whether or not the Officers invited Ms. Grimes into the security office, whether she identified herself, what was said in the security office, and which individuals were being loud and aggressive (if any). In sum, whether there was probable cause to arrest Grimes will be for a jury to sort out.

Several fact disputes also exist as to the excessive force claim against Officers Bradshaw and Goshay. In order to determine whether a police officer's force was excessive under the Fourth Amendment, the court must look at "the totality of the circumstances at the time of the arrest, [and if] the officer used greater force than was

reasonably necessary to make the arrest." *Payne v. Pauley*, 337 F.3d 767, 778 (7th Cir. 2003). "The inquiry is fact specific and balances the intrusion on the individual against the governmental interests at stake. The specific facts a court should consider include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Id.* As indicated above, there are several disputes as to facts material to the excessive force claim including the identity of the arresting officer who allegedly used excessive force in effecting Grimes' arrest and what type of excessive force allegedly was used. The affidavits are as clear as mud on the issue and, at times, conflict with deposition testimony. For these reasons, this issue must go to the jury as well.

## CONCLUSION

For the aforementioned reasons the Court:

- **DENIES** Gary Community School Corporation and the Officers' Motion to Strike as to the affidavit of Regina Hunter and **DENIES AS MOOT** the remainder of the Motion to Strike [DE 100];

- **DENIES** Grimes' Motion for Leave to File Sur-Response to Defendants Gary Community School Corporation, D. Goshay and A. Bradshaw's Reply to Plaintiff's Response to School Defendants' Motion for Summary Judgment [DE 102];

- **GRANTS** the City of Gary's Motion for Summary Judgment [DE 94]; and

- **GRANTS IN PART, AND DENIES IN PART** Gary Community School Corporation, Officer D. Goshay, and Officer A. Bradshaw's Motion for Summary Judgment [DE 91]. The Court **GRANTS** summary judgment in favor of all Defendants on the First Amendment claim and Gary

13

Community School Corporation on all other claims. The Court **DENIES** summary judgment as to the false arrest and excessive force claims against Officers Goshay and Bradshaw.

**SO ORDERED.**

ENTERED: March 23, 2016

s/ Philip P. Simon
**PHILIP P. SIMON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**